**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK RUTKOWSKI,**

                                        **Plaintiff,**

          **vs.**                                                        **8:07-CV-916**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                                        **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


                          **DECISION & ORDER**


          Mark Rutkowski ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) to

review a final determination of the Commissioner of Social Security ("the Commissioner") denying

Plaintiff's application for Supplemental Security Income benefits ("SSI").


**I.       FACTS**

          **A. Procedural History**

          Plaintiff filed an application for SSI on September 26, 2003 alleging disability since June 15,

2003.  R. at 42.[1]  On May 3, 2004, Plaintiff's application for SSI was denied.  R. at 54.  The

following month, Plaintiff made a timely request for a hearing before an Administrative Law Judge

("ALJ").  R. at 57.

_____

          [1]"R." Refers to the Administrative Record.

1

On March 10, 2005, Plaintiff received a hearing in Plattsburgh, NY before ALJ Thomas P. Zolezzi.  R. at 60-62.  An additional hearing was held on August 19, 2005. R. at 42.  After performing a *de novo* review of Plaintiff's disability claim, ALJ Zolezzi issued a decision on September 15, 2005 finding that Plaintiff suffered from severe musculoskeletal and mental impairments, but that such impairments did not preclude him from performing work which existed in significant numbers in the national economy.  R. at 45-48.  The ALJ therefore concluded that Plaintiff did not suffer from a disability as defined in the Social Security Act ("the Act"), and was not eligible for SSI.  R. at 48-49.

Plaintiff made a timely request to the Appeals Council for review of the ALJ's decision.  On July 25, 2007, the Appeals Council denied Plaintiff's request for review. R at 12.  The Appeals Council subsequently set aside their initial denial to "consider additional information." R. at 3.  On August 31, 2007, the Appeals Council reinstated the initial denial of Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision regarding Plaintiff's disability claim. Id.  Plaintiff now seeks review of the Commissioner's final decision.

### B. Educational and Vocational History

Plaintiff was born on May 6, 1958. R. at 319.  He completed schooling through the 11th grade, and received his GED in 1978.  R. at 103, 207.  Plaintiff also attended one year of college. R. at 321.  Between 1990 and 2003, Plaintiff worked as a chef, painter, construction worker and caretaker. R. at 98.

### C. Medical History

### 1. Spine Injury

On June 15, 2003, Plaintiff fell from a second story window and suffered an L1 vertebral

body burst fracture, bilateral transverse process fractures of vertebral body L2 and 50% canal encroachment by a retropulsed bone fragment. R. at 139, 155.  On June 17, 2003, Plaintiff was admitted to Fletcher Allen Health Care and underwent surgical stabilization by Dr. Martin Krag, an orthopedic surgeon. R. at 139-40.  Dr. Krag noted in his post-operative report that Plaintiff underwent L1-2 and T12-L1 posterolateral arthrodesis, internal fixation T12-L1-L2, harvesting of left iliac crest bone grafts and placement of absorbable interposition plate and screws on the left iliac crest. Id.  On July 14, 2003, Plaintiff was discharged from Fletcher Allen in stable condition. R. at 162-64.  At the time of his discharge, Plaintiff was prescribed the following medications: methocarbamol, acetaminophen and hydromorphene. R. at 163.  Plaintiff was instructed to wear a brace when he was not in bed. Id.

Plaintiff visited Dr. Krag for a post-surgical evaluation on July 21, 2003. R. at 138.  Dr. Krag reported that Plaintiff was making satisfactory progress but was still "quite uncomfortable" due to back pain. Id.  Dr. Krag prescribed physical therapy as scheduled, continuation of the use of a brace and continued a 25 pound lifting limit. Id.

On September 27, 2003, Plaintiff fell down some stairs and was taken to the Champlain Valley Physician's Hospital ("CVPH") emergency room complaining of sharp back pain. R. at 171. Plaintiff was given Morphine and Percocet and was discharged. R. at 172.

Dr. Krag performed a second and final post-operative evaluation of Plaintiff on November 10, 2003. R. at 183-84.  He reported that Plaintiff was making good progress and was functioning at a reasonably high level. R. at 183.  Dr. Krag further noted that Plaintiff's injury site discomfort was gradually decreasing and Plaintiff had no local tenderness at the incision site. Id.  Plaintiff's fracture was maintaining its alignment and the fixation hardware was found to be intact. Id. A radiology

3

report from the same day showed progressive but incomplete healing of the L1 compression fracture deformity. R. at 141.  Dr. Krag reported that Plaintiff was using Methadone two to three times per day, but was also using a fair amount of alcohol. R. at 183.  Plaintiff's fracture was found to be sufficiently strong that his brace was no longer needed for safety, but Dr. Krag noted that he may find it more comfortable to continue using the brace "for the next few days or weeks." Id.  Dr. Krag reported that Plaintiff should maintain his lifting limitation at 50 pounds for six months, but that no lifting limitations would apply after "one year from his injury date." Id.  At Plaintiff's request, Dr. Krag wrote Plaintiff a prescription for physical therapy, including pool therapy, for recondition of his trunk and legs. Id.  As Plaintiff's fracture was healing well, Dr. Krag noted that further follow-up examinations would be of little use. Id.

On January 12, 2004, Plaintiff was evaluated by physical therapist Mark Hummel. R. at 286-88.  Plaintiff reported improvement in the numbness in his left buttocks and lower back region and his primary complaint was pain in his left leg. R. at 286.  Plaintiff rated his pain at the time of his evaluation as zero out of 10 on a visual analog pain scale, but noted that it reached eight out of 10 on severe days. Id.  Mr. Hummel recommended that Plaintiff undergo physical therapy treatment one to two times per week for a four week period. R. at 288.

Mr. Hummel evaluated Plaintiff again on March 31, 2004. R. at 282-84.  During this second evaluation, Plaintiff complained of pain on both sides of his lower back (greater on left side) and occasional pain in the left buttocks and back of the left thigh. R. at 281.  Plaintiff also described numbness down his left leg and thigh. Id.  Furthermore, Plaintiff complained of increased lower back pain when bending over or sitting for prolonged periods of time. Id.  Plaintiff described normal pain severity as four out of 10 on a visual analog pain scale, but noted that it reached seven out of 10 on

4

severe days. Id.  Mr. Hummel recommended that Plaintiff undergo further physical therapy treatment one to two times per week for a period of four to six weeks. Id.  On June 9, 2004, Mr. Hummel notified Dr. Sherman that Plaintiff was being discharged as an active patient because he had failed to appear for his last two scheduled physical therapy sessions. R. at 279.

### 2. Alcohol Rehabilitation

On January 30, 2004, Plaintiff was admitted to Conifer Park for an alcohol rehabilitation program. R. at 186.  During Plaintiff's initial assessment, Stephen J. Sivack, CASAC, noted that Plaintiff had a chronic drinking problem, that he denied any present or past suicidal ideation and that he had not received any past psychiatric evaluation or treatment. Id.  Stephen Sivack also noted that Plaintiff's combining alcohol with Methadone and Percocet had caused him "immense problems." Id.  While at Conifer Park, Plaintiff was under medical supervision for pain management. R. at 187. Mr. Sivack reported that water therapy in a whirlpool was particularly useful in reducing Plaintiff's level of pain.  Id.  Plaintiff's prognosis at the completion of rehabilitation was fair to good and it was recommended that he attend four to seven AA/NA meetings per week, meet with a counselor at St. Joseph's Outpatient Counseling and see Dr. Sherman for physical therapy. R. at 188.  Plaintiff was discharged from Conifer Park on February 27, 2004. R. at 189.

### 3. Treating Source Report

On March 29, 2004, Dr. Sherman, Plaintiff's primary care physician, completed a New York State Office of Temporary and Disability Assistance questionnaire detailing Plaintiff's ability to perform work related activities on a day-to-day basis. R. at 200-04.  Dr. Sherman reported that Plaintiff suffered persistent muscle spasms of the paralumbars, but that he had no reflex deficits. R. at 201.  Dr. Sherman also reported that Plaintiff had full range of motion in his shoulder, elbow,

wrist, knee and ankle while the range of motion of his hip and spine were reduced to 75% and 10-25% respectively.  R. at 202.  He noted that Plaintiff utilized a cane and a lumbar support brace and had an antalgic gait and reduced swing. Id.  Furthermore, Dr. Sherman reported that Plaintiff's ability to lift and carry weight was reduced to 20 pounds occasionally and 10 pounds frequently. R. at 203.  Dr. Sherman found that Plaintiff's ability to stand, walk and/or sit was limited to six hours per day, and that persistent postural repetition severely increased Plaintiff's lumbar pain. R. at 203.

Dr. Sherman also submitted his progress notes for Plaintiff at the request of the Commissioner. R. at 253-67.   In a progress report dated October 22, 2004, Dr. Sherman noted that Plaintiff "remain[ed] quite mobile and functional with current pain management." R. at 254.  Dr. Sherman continued that Plaintiff had attempted to self-wean, but found his pain debilitating. Id.  Dr. Sherman added that Plaintiff was successfully care-taking a "severely disabled paramour." Id.

The remaining progress notes are undated.  In one undated progress report, Dr. Sherman noted that Plaintiff had a necessary level of mobility with no untoward side effects and would recommence substance counseling after the New Year. R. at 253.  In another undated report, which made reference to the September 15, 2004 disability paperwork, Dr. Sherman noted that Plaintiff reported a pain level of "7-8," which increased with ambulation. R. at 256.  Another undated report noted that Plaintiff had become "much more active" and was "much more" able to perform daily activities. R. at 257.  This report also noted that Plaintiff's back pain had increased and that he displayed decent range of motion despite significant and permanent loss of flexion and extension. Id.  In another undated report, Dr. Sherman noted that Plaintiff felt his recovery was progressing, but the Methadone he was taking for pain management was causing issues with his train of thought, and Plaintiff felt frustrated by his limitations. R. at 261.  This report also noted that Plaintiff

demonstrated an appropriate range of motion and that his deep tendon reflexes were good. Id.  In yet another undated report, Dr. Sherman noted that Plaintiff had increased range of motion with some ability to twist, and that flexion, extension and side bending were limited, but apparent. R. at 265.

### 4. Consultative Examination Reports

### i. Brett T. Hartman, Psy.D.

On April 16, 2004, Plaintiff attended a consultative psychiatric evaluation with Psychologist Brett T. Hartman. R. at 208-12.  Plaintiff informed Dr. Hartman that he was suffering from mild symptoms of depression.  R. at 208-09.  In assessing Plaintiff's attention and concentration, Dr. Hartman found that Plaintiff could count without difficulty and performed "fairly well with the calculations and serial threes." R. at 209.  Dr. Hartman reported that Plaintiff's recent and remote memory skills were generally intact, his cognitive functioning was average, his insight was fair and his judgment was fair to poor given his history of legal issues and substance abuse. R. at 210.  Dr. Hartman found that Plaintiff was able to follow and understand simple instructions and directions, that he had fair attention and concentration skills and a fair ability to learn new tasks. R. at 210-11. Furthermore, Dr. Hartman noted that Plaintiff had mild difficulty making appropriate decisions, relating adequately with others, dealing appropriately with the normal stressors of life and that he would likely have some difficulty performing a variety of tasks due to his physical complaints.  R. at 211.

### ii. Dr. Nader Wassef

On April 16, 2004, Plaintiff also attended a consultative orthopedic examination with Dr. Nader Wassef. R. at 213-16.  Dr. Wassef noted that Plaintiff informed him that his walking cane was self-prescribed and was not suggested to him by his primary care physician. R. at 214.  Dr. Wassef

7

found that Plaintiff's hand and finger dexterity were intact and that Plaintiff had full range of motion

of his shoulders, elbows, forearms, wrists, hips, knees and ankles. R. at 215.  Plaintiff was found to

have full flexion and extension of his cervical spine and 80% flexion and extension in both his

thoracic and lumbar spines. Id.  Dr. Wassef also noted that Plaintiff had diffused spinal and

paraspinal tenderness in the upper area of the lumbar spine and the lower area of the thoracic spine as

well as tenderness in the left iliac crest. Id.  Plaintiff's Straight Leg Raise ("SLR") test was negative

and Dr. Wassef found no trigger points. Id.  Dr. Wassef concluded that Plaintiff had minimal

limitations of movement of his lower back in regard to bending and extension. R. at 216.  Plaintiff

was urged to continue his follow-up visits with Dr. Sherman in order to improve pain management.

Id.

### 5. Non-Examining Physician Report

On April 30, 2004, Dr. Abdul Hameed, a non-examining State Agency medical examiner,

reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form and a

Mental Residual Functional Capacity Assessment. R. at 218-35.  In his Psychiatric Review

Technique, Dr. Hameed noted that Plaintiff had suffered no episodes of decompression and

determined that he had no limitations on activities of daily living, moderate limitations on social

functioning and mild limitations on maintaining concentration, persistence or pace. R. at 228.  In his

Mental Residual Functional Capacity Assessment, Dr. Hameed opined that Plaintiff was moderately

limited in his ability to interact appropriately with the general public, to accept instructions and

respond appropriately to criticism from supervisors and to respond appropriately to changes in the

work setting. R. at 232-33.  In all other functional categories, Dr. Hameed found that Plaintiff was

either not significantly limited or that there was no evidence of any limitation. Id.

8

**6. Plaintiff's Testimony**

On March 10, 2005, Plaintiff received a hearing before ALJ Zolezzi. R. at 315-40.  Plaintiff testified that he suffered from constant pain in his back and sharp, shooting pains down his left leg. R. at 329.  Plaintiff noted that he was taking Percocet three times a day for pain and Lipitor for cholesterol. Id.  Plaintiff reported that he could walk a quarter of a mile into town and "do the church thing for an hour" and then walk home. R. at 330. He testified that he used a single point cane because of pain in his leg and because he slipped once before. R. at 323.  Plaintiff reported further that he could sit in a chair for 30 to 45 minutes before having to get up and walk around, and he noted that he sleeps for five or six hours before waking up because of pain. Id.  While Plaintiff testified that he could bend or squat to pick up an object from the ground, he noted that he "[didn't] like doing it." Id.  Plaintiff surmised that the heaviest weight that he could lift at that time was ten pounds. Id.

Plaintiff testified that it took him two to three times longer to go grocery shopping than it had before his injury, but that he had no problems preparing meals once his shopping was completed. R. at 331.  While Plaintiff noted that he performed some household chores such as vacuuming, he had to hire someone to perform outdoor tasks such as mowing the lawn and plowing the garden. R. at 333.  Plaintiff noted that he went to the mall, attended meetings at St. Joseph's on Tuesdays and Wednesdays and accompanied his friend, Mary, on her doctor's appointments. R. at 333-34.  Outside of these tasks, Plaintiff testified that he spent his time reading and watching television. R. at 334. Plaintiff reported having no trouble performing personal hygiene tasks. R. at 336.

Plaintiff further testified that he felt depressed as a result of not being able to complete tasks that he was previously able to perform. R. at 328.  He noted, however, that he was "not suicidal," and

9

that he was not currently under the supervision of a psychiatrist or psychologist and was not taking any medication in relation to his alleged depression. R. at 328-29.

On August 19, 2005, Plaintiff received a supplemental hearing before ALJ Zolezzi for the purpose of describing his previous work to a Vocational Expert ("VE"). R. at 341-59.  Plaintiff testified that his condition had remained the same since the March 10, 2005 hearing. R. at 343.  He noted that he had seen Dr. Sherman twice since the initial hearing and that his medications had not changed. Id.

Plaintiff testified that as a caretaker at Mary's House, he performed yard work, painting, cleaning, vacuuming, laundry, grocery shopping, gardening and other various odd jobs around the home. R. at 344-45.  He noted that in his capacity as caretaker, he occasionally lifted 100 pounds worth of items in a wheelbarrow. R. at 345.  As a chef, Plaintiff testified that he supervised approximately 15 employees, and had to lift 50 pounds worth of food. R. at 346-47.  As a construction worker, Plaintiff testified that he had to lift 80 pound bags of cement. R. at 346.

### 7. Vocational Expert Testimony

During the August 19, 2005 hearing, ALJ Zolezzi enlisted the expertise of VE Salvatore Garozzo to provide an opinion on Plaintiff's vocational capabilities and limitations.  R. at 348.  Mr. Garozzo reviewed a record of claimant's prior work history and listened to Plaintiff's testimony regarding his previous work. R. at 344-49.  Mr. Garozzo classified Plaintiff's work as a construction worker as unskilled and very heavy, his work as a painter as semi-skilled and heavy, his work as a chef as skilled and medium and his work as a caretaker as medium in terms of exertion.  R. at 352-53.

ALJ Zolezzi asked Mr. Garozzo to consider a hypothetical situation wherein a 47 year old

with a GED has the following non-exertional impairments: he can only perform simple, entry level jobs; he can make only simple decisions; he cannot do any planning, scheduling, report writing, supervising and he cannot be forced to meet high production quotas; he can have occasional, but infrequent interaction with the public; he can work in proximity of co-workers, but with limited coordination with them and he can handle little or no change in the work environment. R. at 354. Based on this hypothetical, Mr. Garozzo determined that an individual with such impairments could not perform the past work of Plaintiff. R. at 354. Furthermore, no jobs would be available for this individual at the sedentary level, and the position of housekeeper would be the only feasible position at the 'light' level. R. at 354-55. Mr. Garozzo reported that there were 1,492,000 housekeeper positions at the national level, and 1,640 in the North Country region, which includes Clinton, Essex, Franklin, Hamilton, Jefferson, Louis and St. Lawrence Counties. R. at 355.

### 8. Evidence Submitted to the Appeals Council

On July 17, 2007, Plaintiff's representative submitted additional evidence to the Appeals Council for consideration. R. at 302. First, Plaintiff's counsel submitted an updated Medical Examination for Employability Assessment completed by Dr. Sherman on September 15, 2004. R. at 296-97. Dr. Sherman noted in the Assessment that Plaintiff suffered from narcotic use, alcohol dependence, lumbar spine dysfunction and lumbar pain. R. at 296. All of Plaintiff's conditions were deemed chronic, and Dr. Sherman recommended occupational, physical and maintenance therapies. Id. Dr. Sherman reported that Plaintiff was moderately limited in his ability to walk, stand, sit and climb stairs, and was very limited in his ability to push, pull, bend, lift and carry. Id. Furthermore, Dr. Sherman noted that in an employment setting, Plaintiff should be restricted from driving, using mechanical devices, lifting, pushing, bending or pulling. R. at 297. No limitations pertaining to

11

mental functioning were reported by Dr. Sherman. Id.  Dr. Sherman opined that Plaintiff's chronic

conditions constituted a severe impairment(s). Id.

Next, Plaintiff's counsel submitted a Physical Assessment for Determination of

Employability form completed by examining physician Dr. Wassef on January 16, 2007. R. at 299-

300.   Dr. Wassef opined that Plaintiff's ability to walk, stand, sit, pull, push and bend were all

moderately limited to two to four hours.  R. at 299.  He further reported that Plaintiff's ability to both

climb stairs and use public transportation was limited to one to two hours, and that Plaintiff was

limited to lifting or carrying 10 pounds occasionally. Id.  Dr. Wassef concluded that Plaintiff

appeared permanently disabled. Id.  Plaintiff's counsel also submitted a Statement of Claimant

Employability for the Essex County Department of Social Services signed by Dr. Wassef on

February 23, 2007 stating that Plaintiff was unable to work for an unknown period of time. R. at 308.

Plaintiff's counsel next submitted a radiology report from CVPH dated April 21, 2004. R. at

312.  The radiology report noted a compression deformity of L1 with an overall unchanged

appearance from Plaintiff's prior examination.  Id.  The report further noted "mild degenerative

changes in the discs" at the levels of L2-3 and L3-4 along with moderate degenerative change seen in

the disc at L5-S1 and mild overall osteopenia. Id.

Finally, Plaintiff's counsel submitted Plaintiff's 2003 Essex County Department of Social

Services disability determination.  R. at 311.  The Essex County Department of Social Services

found that Plaintiff met Listing 1.04 and he was deemed Disabled Group II. Id.


## II.     BURDEN OF PROOF

The claimant bears the initial burden of showing, by means of medical evidence, that he is

disabled as defined in the Social Security Act. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 336

(1976)(citation omitted).  The Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than [twelve] months." 42 U.S.C.A § 423(d)(1)(A).  In determining whether an individual is

disabled, the following analysis is applied by the ALJ:

> "First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a 'severe impairment' that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform."

<u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1999) (citing <u>Balsamo v. Chater</u>, 142 F.3d 75, 79-80 (2d

Cir. 1998).  Once a disability is established, the burden shifts to the Commissioner to show "the

existence of alternative substantial gainful work which exists in the national economy and which the

claimant could perform" considering his physical capacity, age, education and training.  <u>Parker v.</u>

<u>Harris</u>, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).


## III.    STANDARD OF REVIEW

In reviewing the Commissioner's final decision, a court's inquiry is limited to two

determinations: (1) whether the Commissioner applied the correct legal standard; and (2) whether the

13

Commissioner's "conclusions were supported by substantial evidence in the administrative record."

Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

"Substantial evidence" is not a "mere scintilla," but rather is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Lamay, 562 at 507 (citing Richardson v.

Perales, 402 U.S. 389, 401 (1971).


IV.    **ALJ FINDINGS**

In his September 15, 2005 decision, ALJ Zolezzi found that Plaintiff's post spinal fusion

status, together with his mild depression, constituted a "severe" impairment, but did not "meet or

medically equal" one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. R. at

44-45.  In determining whether Plaintiff was able to perform his past work or other work existing in

the national economy in significant numbers, ALJ Zolezzi first had to assess Plaintiff's residual

functional capacity ("RFC").[2]  The ALJ found that over the course of an eight our work day with

normal breaks, Plaintiff had the capacity to sit, stand and/or walk for six hours. R. at 45.  He also

found that Plaintiff had the ability to lift no more than 20 pounds. Id.  Plaintiff was found to be

capable of performing simple entry level work with the ability to make simple decisions. Id.  The

ALJ determined that Plaintiff could have only infrequent interaction with the public and co-workers,

and that he could work in proximity with his co-workers, but only occasionally in coordination or

conjunction with them. Id.  Furthermore, the ALJ found that Plaintiff should experience little or no

changes in his work environment, and that his work environment should be minimally stressful,

---

[2]Residual Functional Capacity ("RFC"): The most an individual can still do despite their physical and/or mental limitations that affect what they can do in a work setting. 20 C.F.R. §§ 404.1545 and 416.945.

involving no planning, scheduling, report writing, supervision or high production quotas. Id.

In reaching his conclusion regarding Plaintiff's exertional limitations, the ALJ gave controlling weight to the opinion of Dr. Sherman, Plaintiff's primary care physician. R. at 46. Consideration was also given to the opinions of Dr. Krag, Plaintiff's orthopedic surgeon, and examining physician Dr. Wassef. Id.  In determining Plaintiff's non-exertional impairments, the ALJ gave consideration to the opinions of consultative examiner Brett Hartman, Psy.D. and State Agency medical examiner Dr. Hameed. R. at 44.

The ALJ also considered Plaintiff's testimony pursuant to 20 C.F.R. §§ 404.1529 and 416.929.  R. at 46.  ALJ Zolezzi determined that Plaintiff's allegations regarding his symptoms and limitations were not entirely credible in light of the other evidence in the record. Id.  Particularly, the ALJ noted that Plaintiff's allegations of being unable to sit, stand, bend, climb stairs or walk without a cane are contradicted both by his own testimony and by the objective medical evidence of record. R. at 47.  Furthermore, the ALJ construed Plaintiff's voluntary discontinuation of physical therapy as an indication that Plaintiff did not believe that he required the assistance of therapy. Id.  The ALJ also noted the fact that Plaintiff admittedly mixed alcohol and pain medication, had a history of alcohol and substance abuse and had a considerable criminal record in determining that his testimony was not entirely credible. Id.

Based on Plaintiff's RFC, ALJ Zolezzi determined that Plaintiff was unable to return to his past relevant work as a caretaker, construction worker, painter or chef. R. at 47.  The ALJ concluded that each of these positions would either require Plaintiff to work above his current exertional abilities or force him to have frequent interaction with the public and/or co-workers. Id.

Having determined that Plaintiff was unable to perform his past relevant work, the ALJ next

considered Plaintiff's age, education, RFC, past work experience and the testimony of a Vocational

Expert in holding that Plaintiff was capable of performing jobs that existed in significant numbers in

the national economy. R. at 48.  The ALJ found that Plaintiff had the exertional capacity to perform

light work, but that his non-exertional limitations impeded his ability to perform all or substantially

all of the requirements of this level of work. R. at 48.  In order to determine how severely Plaintiff's

non-exertional limitations impeded his ability to perform light work, Plaintiff requested the opinion

of Vocational Expert Salvatore Garozzo. Id.  The ALJ accepted Mr. Garozzo's opinion that Plaintiff

was capable of performing the position of housekeeper as defined in the Dictionary of Occupational

Titles. R. at 48.  As such, the ALJ determined that Plaintiff was "not disabled," and was therefore not

eligible for SSI under sections 1602 and 1614(a)(3)(A) of the Act. R. at 48-49.


## V.    DISCUSSION

### A. Full and Fair Hearing

Plaintiff first argues that he did not knowingly and voluntarily waive his right to be

represented by counsel at the administrative hearings, and that the ALJ failed to fully develop the

administrative record. Dkt. No. 10, at 14-18.

### i. Waiver of Right to Counsel

While the Commissioner is not obligated to provide an attorney for a claimant, the ALJ must

ensure that the claimant is aware of his right to counsel.  Alvarez v. Bowen, 704 F. Supp. 49, 52

(S.D.N.Y. 1989) (citing Robinson v. Sec'y of Health and Human Serv., 733 F.2d 255, 258 (2d Cir.

1984)).  Plaintiff can waive his right to counsel as long as he does so knowingly and intelligently.

Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982).

In the present case, Plaintiff was thoroughly and repeatedly informed of his right to counsel. In the initial claim disapproval notice, the Regional Commissioner of the Social Security Administration informed Plaintiff in writing of his right to counsel and provided Plaintiff with information regarding obtaining legal assistance. R. at 56.  Plaintiff also received two Notice of Hearing forms, both of which stated that he had a right to representation at his administrative hearings. R. at 61, 68.

At Plaintiff's initial hearing on March 10, 2005, ALJ Zolezzi plainly informed Plaintiff that he had a right to counsel and explained how both private counsel and Legal Aid would charge for their services in such a case. R. at 316.  Furthermore, the ALJ offered Plaintiff the opportunity to receive an extension so that he could seek counsel. Id.  Plaintiff declined the offer for an extension, and agreed to proceed with the hearing. R. at 317-18.  At the supplemental hearing on August 19, 2005, ALJ Zolezzi again informed Plaintiff of his right to counsel and offered Plaintiff an extension if he wished to exercise that right. R. at 342.  Plaintiff responded that he would proceed *pro se*, and that if he was not satisfied with the ALJ's decision, he would "deal with the next level." Id.

The record makes it clear that Plaintiff was informed on numerous occasions, and through multiple forums, that he had a right to counsel for his administrative hearings.  As Plaintiff is able to speak and read English and has received a GED (R. at 96, 103), the ALJ properly found that Plaintiff's waiver of his right to counsel was made knowingly and intelligently.

**ii**. **Adequate Development of Administrative Record**

The ALJ generally has an affirmative obligation to develop the administrative record. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (internal citations omitted).  Where a claimant is unrepresented by counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of,

and explore for all the relevant facts." Cutler v. Weinberger, 516 F.2d 1282, 286 (2d Cir. 1975.)

In the present case, the ALJ made considerable efforts to fully develop the administrative record. Following the initial administrative hearing on March 10, 2005, the ALJ kept the record open to allow inclusion of any further relevant medical information. R. at 318. During the March 10 hearing, the ALJ informed Plaintiff he would also ensure that Plaintiff's doctors were contacted to request updated copies of Plaintiff's medical records. Id. On March 14, 2005, the ALJ sent Dr. Sherman a request for all of Plaintiff's medical records from June 24, 2003 forward. R. at 252. A similar request was sent to Physical Therapist Mark Hummel on March 14. R. at 272. Furthermore, Plaintiff was given the opportunity to cross examine VE Garozzo following the completion of his testimony. R. at 356.

Accordingly, ALJ Zolezzi scrupulously and conscientiously probed into the relevant facts of the present case and satisfied his affirmative obligation to develop the administrative record.

**B. Listing 1.04(A)**

Plaintiff contends next that the ALJ erred in not finding that Plaintiff's injury met or equaled Listing 1.04(A).[3] Dkt. No. 10, at 31-32. At step three of the disability analysis, the ALJ determines whether a claimant's impairment meets or equals "one or a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987). While the ALJ should provide a detailed explanation for his

---

[3]20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04(A) requires a spinal disorder (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord with: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising (sitting and supine).

findings at this step, the absence of an express rationale does not preclude affirmation of the ALJ's opinion where portions of the ALJ's decision and the evidence before him indicate that his conclusion is supported by substantial evidence. <u>Berry v. Schweiker</u>, 675 F.2d 464, 468 (2d Cir. 1982).

In the present case, ALJ Zolezzi acknowledged that Plaintiff had a "severe" back disorder, but found that his impairment did not meet Listing 1.04(A). R. at 45.  Unfortunately, ALJ Zolezzi failed to provide thorough reasoning for his finding at this step of the disability analysis. <u>Id</u>.  Other portions of the ALJ's detailed opinion, however, combined with the evidence of record, indicate that his opinion regarding Plaintiff's impairment is supported by substantial evidence.  While Plaintiff suffered decreased range of motion of the spine, his muscle strength was reported as considerable or full without atrophy. R. at 215-16, 261, 283.  Furthermore, Dr. Wassef reported that Plaintiff's reflexes were physiologic and equal with no sensory abnormalities. R. at 201.  Dr. Sherman reported that Plaintiff had no sensory, motor or reflex deficits. R. at 215.

To further support his argument, Plaintiff cites a 2003 report by the Essex County Department of Social Services that declared his impairment sufficient to meet Listing 1.04. Dkt. No. 10, at 32.  Because the report was submitted to the Appeals Council, the appropriate inquiry is not whether the ALJ should have considered it, but rather whether it should have compelled review by the Council.  The Appeals Council will review a case where new and material evidence is submitted only where the new evidence relates to the period on or before the date of the ALJ decision and it finds that the ALJ's holding is contrary to the weight of the evidence of record. 20 C.F.R. §§ 416.1467 and 416.1470.  Here, the report by the Essex County Department of Social Services relates to the period before the date of the ALJ decision, but the Appeals Council properly found that the

19

ALJ's decision was not contrary to the weight of the evidence of record.  Furthermore, the SSA is not bound by disability determinations made by other governmental agencies. 20 C.F.R. § 416.901(a).

Accordingly, the ALJ properly determined that Plaintiff's injury did not meet or equal Listing 1.04(A), and the Appeals Council correctly denied review of Plaintiff's case on this point.

**C. Plaintiff's Ability to Perform "Other Work"**

Plaintiff next argues that the ALJ erred in both his assessment of Plaintiff's Residual Functional Capacity ("RFC") and in determining that Plaintiff was capable of performing "other work" that exists in the national economy. Dkt. No. 10, at 19, 22.

**i. Residual Functional Capacity ("RFC")**

A claimant's RFC is the most that an individual can do in a work setting despite their physical and/or mental limitations. 20 C.F.R. §§ 404.1545 and 416.945.   The determination of a claimant's RFC is based on all relevant medical evidence, and is reserved solely for the ALJ. 20 C.F.R. §§ 416.946(c) and 404.1545.

In the instant case, ALJ Zolezzi considered Plaintiff's physical and mental impairments and determined that Plaintiff had the capacity to perform simple entry level work with the ability to make simple decisions. R. at 45.  He found that Plaintiff could lift no more than 20 pounds and had the capacity to sit, stand and/or walk for six hours out of an eight hour work day with normal breaks. Id. The ALJ determined that Plaintiff could have only infrequent interaction with the public and co-workers, and that he could work in proximity with his co-workers, but only occasionally in coordination or conjunction with them. Id.  Furthermore, the ALJ found that Plaintiff's work environment should be minimally stressful and should be subject to little or no changes. Id.

20

The ALJ's determination of Plaintiff's exertional limitations was based on the clinical findings and medical opinions of Dr.'s Krag, Sherman and Wassef. R. at 45-46.  On June 17, 2003, Plaintiff underwent surgical stabilization by Dr. Martin Krag, an orthopedic surgeon.139-40.  During Plaintiff's final post-operative examination, Dr. Krag reported that Plaintiff was making good progress, functioning at a reasonably high level and had gradually decreasing pain at the injury site. R. at 183.  Dr. Krag reported that Plaintiff should maintain a lifting limitation of 50 pounds for a six month period, but that no lifting limitations would be necessary after one year from the date of Plaintiff's injury. Id.

At the request of the Commissioner, Dr. Sherman, Plaintiff's primary care physician, submitted a number of progress notes detailing Plaintiff's progression under his care. R. at 253-67. A progress note from Dr. Sherman dated October 22, 2004 noted that Plaintiff was "quite mobile and functional with current pain management." R. at 254.  Further undated progress notes reported that Plaintiff had become much more active and was capable of performing daily activities, he displayed an appropriate range of motion with good deep tendon flexes and had increased range of motion with flexion, extension and side bending apparent but limited. R. at 257, 261, 265.  On March 29, 2004, Dr. Sherman opined that Plaintiff was limited to occasionally lifting 20 pounds, frequently lifting 10 pounds, and sitting, standing and/or walking for up to six hours during an eight hour work day. R. at 203.  This medical opinion was given controlling weight by the ALJ. R. at 46.

During a consultative orthopedic examination on April 16, 2004, Dr. Wassef observed that Plaintiff's gait was normal and that he appeared to be in no acute distress. R. at 214.  Dr. Wassef also noted that Plaintiff had 80% flexion and extension of the thoracic and lumbar spines with full range of motion of lateral flexion as well as rotary movements.  R. at 215.  No SI joint tenderness was

detected and Plaintiff had a negative SLR test with no trigger points. Id.  Dr. Wassef opined that

Plaintiff had minimal limitations pertaining to bending and extending his lower back. R. at 216.

ALJ Zolezzi's determination of Plaintiff's non-exertional limitations was based on the

examinations and opinions of consultative examiner Brett Hartman, Psy.D. and State Agency

medical examiner Dr. Abdul Hameed. R. at 44.  On April 16, 2004, Psychologist Brett T. Hartman

examined Plaintiff and found that his recent and remote memory skills were generally intact, his

cognitive functioning was average, his insight was fair and his judgment was fair to poor in light of

his substance abuse and history of legal trouble. R. at 210.  Dr. Hartman also found that Plaintiff was

able to follow and understand simple instructions and directions, that he had fair attention and

concentration skills and a fair ability to learn new tasks. R. at 210-11.  Furthermore, Dr. Hartman

found that Plaintiff would have mild difficulty relating adequately with others, dealing appropriately

with normal stressors of life and making appropriate decisions. R. at 211.

On April 30, 2004, Dr. Abdul Hameed, a non-examining State Agency medical examiner,

completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity

Assessment after reviewing Plaintiff's medical records. R. at 218-35.  In his Psychiatric Review

Technique, Dr. Hameed found that Plaintiff had no limitations on activities of daily living, moderate

limitations on social functioning and mild limitations on maintaining concentration, persistence or

pace. R. at 228.  Dr. Hameed also noted that Plaintiff had suffered no episodes of decompression. Id.

In his Mental Residual Functional Capacity Assessment, Dr. Hameed found that Plaintiff was

moderately limited in his ability to respond appropriately to changes in a work setting, accept

instructions and respond appropriately to criticism from supervisors and to interact appropriately

with the general public. R. at 232-33.  In all other functional categories, Dr. Hameed found either no

evidence of limitation or found that Plaintiff was not significantly limited. Id.

Plaintiff contends that the ALJ did not adequately consider the side effects of his prescribed pain medication in determining his RFC. Dkt. No. 10, at 32-33.  There is no record evidence to support Plaintiff's contention.  The only evidence of negative medicinal side effects suffered by Plaintiff resulted from his mixing alcohol with Methadone, as noted by Dr.'s Krag and Sherman. R. at 183, 264.  In fact, Plaintiff failed to articulate a single negative side effect resulting from prescription medication in his brief. Dkt. No. 10, at 32-33.

Accordingly, the ALJ reasonably relied on the clinical findings and opinions of the aforementioned medical sources, and his assessment of Plaintiff's RFC was supported by substantial evidence.

### ii. "Other Work"

At step five of the sequential analysis, the burden shifts to the Commissioner to prove "the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform" considering his physical capacity, age, education and training.  Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted); see also 20 C.F.R. § 416.920(g).  Where a claimant has only exertional impairments, the Commissioner's burden is satisfied by the application of the Medical-Vocational Guidelines ("the Grids").  Bapp v. Bowen, 803 F.2d 601, 604 (2d Cir. 1986).  Where a claimant has both exertional and non-exertional impairments, however, application of the Grids is improper if the claimant's non-exertional impairments "significantly limit the range of work permitted by his exertional limitations." Id. at 605 (quotations omitted).  The testimony of a vocational expert, or similar evidence, is required where a claimant's non-exertional limitations significantly diminish their ability to perform any level of alternative substantial gainful

work. Id. At 606.  A vocational expert is to be considered a reliable evidentiary source where there is substantial evidence of record to support the assumption underlying the hypothetical scenario upon which the expert has based their opinion. Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

 Because the ALJ found that Plaintiff's non-exertional impairments precluded him from performing all or substantially all of the requirements of "light work," he requested the services of vocational expert Salvatore Garozzo.  R. at 48.  Mr. Garozzo listened via telephone to Plaintiff's testimony regarding his past work experience and alleged present impairments during the August 19, 2005 supplemental hearing. R. at 341.  Following Plaintiff's testimony, ALJ Zolezzi asked Mr. Garozzo to consider the hypothetical scenario set forth above in Section I(C)(7). R. at 354.  Mr. Garozzo found that an individual with the impairments posited in the ALJ's hypothetical scenario would be incapable of performing Plaintiff's past work. Id.  Furthermore, Mr. Garozzo opined that an individual with such impairments would be incapable of performing any work at the sedentary level but would be capable of working as a housekeeper, a position considered "light work." R. at 354-55.  Mr. Garozzo reported that there were 1,492,000 housekeeper positions at the national level, and 1,640 in the North Country region, which includes Clinton, Essex, Franklin, Hamilton, Jefferson, Louis and St. Lawrence Counties. R. at 355.

The Court previously found in Section V(C)(i), supra, that the ALJ reasonably relied on the opinions of Dr. Abdul Hameed and Brett Hartman, Psy.D. in assessing Plaintiff's non-exertional impairments.  As such, the hypothetical scenario posed to Mr. Garozzo by the ALJ, which was based on these non-exertional impairments, was supported by substantial evidence.  Accordingly, Mr. Garozzo's testimony is reliable evidence, and the Commissioner satisfied his burden of proving the

24

existence of alternative substantial gainful work which Plaintiff could perform and which exists in the national economy.

### D. Treating Physician Rule

Plaintiff next contends that the ALJ erred in not granting controlling weight to the opinion of Plaintiff's treating physician, Dr. Sherman. Dkt. No. 10, at 20.  A treating physician's opinion receives controlling weight if it is well supported by medically acceptable clinical and laboratory findings and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(d) and 416.928(d).

Plaintiff's contention differs from a traditional treating physician rule argument in that Dr. Sherman submitted two contradictory medical opinions and Plaintiff argues specifically that the ALJ granted controlling weight to the wrong opinion.  On March 29, 2004, Dr. Sherman completed a New York State Office of Temporary and Disability Assistance questionnaire in which he noted that Plaintiff was limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently. R. at 203.  Dr. Sherman also noted that Plaintiff was able to stand, walk and/or sit for six hours out of an eight hour work day with normal breaks. Id.  It was this opinion that was granted controlling weight by the ALJ. R. at 46.

On September 15, 2004, Dr. Sherman completed a Medical Examination for Employability Assessment. R. at 296-97.  He reported that Plaintiff was moderately limited in his ability to walk, stand, sit and climb stairs, and was very limited in his ability to push, pull, bend, lift and carry. R. at 296.  Dr. Sherman categorized Plaintiff's impairments as chronic and opined that they constituted a severe impairment(s). R. At 296-97.  It is this opinion that Plaintiff argues should have received controlling weight by the ALJ. R. at 21.  Dr. Sherman's second opinion was submitted on July 17,

2007 as additional evidence provided to the Appeals Council for consideration. R. at 302.  Because Dr. Sherman's second opinion was not yet part of the record at the time that the ALJ made his decision, the proper question to be determined is not whether the ALJ's holding was made in error, but rather whether the introduction of the report should have compelled review by the Appeals Council.

The Appeals Council will review a case where new and material evidence is submitted only where the new evidence relates to the period on or before the date of the ALJ decision and it finds that the ALJ's holding is contrary to the weight of the evidence of record. 20 C.F.R. §§ 416.1467 and 416.1470.  In the present case, Dr. Sherman's second opinion relates to the period prior to the ALJ's September 15, 2005 decision.  The Appeals Council correctly held, however, that Dr. Sherman's second opinion did not constitute grounds for review because the ALJ's initial decision was supported by the weight of the evidence of record.  R. at 3-6.  As noted in Section V(C)(i), Dr. Sherman's March 29, 2004 medical opinion was supported by both his own progress notes and the vast majority of medical evidence of record.  Dr. Sherman did not provide any objective medical evidence to support his change of opinion regarding Plaintiff's limitations.  In fact, Dr. Sherman's September 15, 2004 opinion contradicts his own progress reports. R. at 253-67.

Plaintiff similarly argues that the ALJ erred in failing to give weight to the second opinion of examining physician Dr. Wassef. Dkt. No. 10, at 22.  On January 16, 2007, Dr. Wassef completed a Physical Assessment for Determination of Employability form in which he opined that Plaintiff's ability to walk, stand, sit, pull, push and bend were all moderately limited to two to four hours and Plaintiff was limited to lift or carry 10 pounds occasionally R. at 299.  This opinion is in direct contrast with Dr. Wassef's original April 16, 2004 report in which he found that Plaintiff had

minimal limitations. R. at 216.  Because Dr. Wassef's report was submitted to the Appeals Council

along with Dr. Sherman's second report, the determinative inquiry is whether it should have

compelled review by the Appeals Council.  It is unclear whether Dr. Wassef's January 16, 2007

opinion relates to the period prior to the ALJ's September 15, 2005 decision.  This issue is

immaterial, however, as Dr. Wassef's opinion is in contrast to the weight of the medical evidence of

record and, therefore, does not draw into question the validity of the ALJ's original decision.  Not

only does Dr. Wassef's second opinion contradict the majority of evidence of record, Dr. Wassef

fails to provide any objective medical evidence to support his drastic change of opinion.

Furthermore, there is no indication that Dr. Wassef personally examined Plaintiff in the nearly three

years that lapsed between his contradictory opinions.

Accordingly, the ALJ did not err in affording controlling weight to the March 29, 2004

opinion of Dr. Sherman, and the Appeals Council properly found that the second medical opinions of

Dr.'s Sherman and Wassef did not compel review of the instant case.

### E. Credibility of Plaintiff's Testimony

Plaintiff's final contention is that the ALJ erred in failing to afford full credibility to

Plaintiff's testimony. Dkt. No. 10, at 25-31.  A claimant alleging disability resulting from subjective

pain "need not adduce direct medical evidence confirming the extent of the pain," but medical

evidence or laboratory findings showing the existence of a medical impairment that could reasonably

be expected to produce such pain are required.  Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999)

(internal citations omitted).  Where a claimant alleges symptoms of a greater severity of impairment

than can be shown by objective medical evidence, other evidence will be considered, including

claimant's daily activities and the medications, methods and treatments used to alleviate his

symptoms. 20 C.F.R. § 416.929(c)(3).   It is the function of the Commissioner, not the reviewing

court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant." Caroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983).  Where the

Commissioner's appraisal of credibility is supported by substantial evidence, the reviewing court

"must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v.

Sec'y of Health and Human Serv., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted).

        In the present case, ALJ Zolezzi found that Plaintiff's claims of being disabled because of his

inability to sit, stand, bend or climb stairs were not fully credible because they contradicted both his

own testimony and the objective medical evidence of record. R. at 46-47.  To support this holding,

the ALJ pointed to Plaintiff's testimony at the initial hearing stating that he was capable of picking

up objects off the floor, lifting up to 10 pounds, walking a quarter of a mile, sitting for at least 30

minutes and preparing meals. R. at 47.  ALJ Zolezzi next cited progress notes in which Plaintiff

reported to Dr. Sherman that he was becoming increasingly active, much more able to perform his

daily living activities and able to moderate his pain with the use of medication. R. at 47, 253-67.

The ALJ construed Plaintiff's failure to attend multiple prescribed physical therapy sessions as

evidence that Plaintiff did not believe that he was in need of therapy, thereby undermining his claims

of debilitating limitations. R. at 47.  Finally, the ALJ noted that Plaintiff's admitted mixing of pain

medication and alcohol, combined with his previous substance abuse and criminal history, further

detracted from his credibility. Id.  In addition to the evidence adduced by ALJ Zolezzi, Plaintiff's

testimony also contradicted the opinion of orthopedic surgeon Dr. Krag.  On November 10, 2003, Dr.

Krag reported that Plaintiff was functioning at a reasonably high level with gradually decreasing

injury-site discomfort. R. at 183.  Dr. Krag also noted that Plaintiff's x-rays showed that his spinal

fusion was healing well and he opined that Plaintiff would have no lifting imitations after one year from his injury date. R. at 183.

Accordingly, as substantial evidence draws into question the full veracity of Plaintiff's subjective assertions, the ALJ did not err in discounting the credibility of Plaintiff's testimony.

## VI.   CONCLUSION

Where the findings of the Commissioner are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); <u>Perez</u>, 77 F.3d at 46.  In the present case, the ALJ's decision that Plaintiff did not suffer from a disability as defined in the Act, and therefore was not eligible for SSI, was supported by substantial evidence.  Accordingly, the Court hereby ORDERS that the decision of ALJ Zolezzi be affirmed.

IT IS SO ORDERED.

Dated:July 23, 2009

Thomas J. McAvoy
Senior, U.S. District Judge